Charles WINSLOW, Respondent,

v.

Tom NOLAN, Appellant.

No. ED 93544.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 24, 2010.

Charles Alan Hurth, III, Union, MO, for Appellant.

Joseph L. Racine, Chesterfield, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Defendant Tom Nolan (Nolan) appeals from a judgment awarding Plaintiff Charles Winslow (Winslow) damages stemming from undivided profits and unjust enrichment on Winslow's claim of an equal partnership interest in a plumbing business. The trial court found that Nolan and Winslow had agreed to share equally the profits earned from their plumbing partnership, that the profits had not been equally divided, and that Nolan was unjustly enriched by accepting the benefits of Winslow's labor, knowledge and experience. Because we find no substantial evidence of a partnership agreement between Winslow and Nolan in the record, and no substantial evidence of unjust enrichment to Nolan, we reverse the trial court's judgment.

## Background

On May 12, 2008, Winslow filed a petition against Nolan alleging breach of contract and unjust enrichment. A bench tri-

al took place on June 3, 2009, during which the following evidence was adduced.

Winslow and Nolan worked as employees of the same plumbing business during 2003 and 2004. Winslow worked as a plumber and Nolan worked in the office. Winslow testified that he and Nolan had talked about starting a plumbing company specializing in backflow prevention, with Nolan providing the customer list from their current employer and Winslow performing the plumbing work. Winslow testified that he and Nolan agreed that Winslow would acquire the necessary licenses and bonding in Winslow's name as a master plumber and that Winslow would perform the plumbing work for the business. Nolan would provide the customer list and manage the sales aspect of the business. Winslow testified that he and Nolan agreed the business would be structured as a partnership in which they each shared 50 percent of the profits and ownership. Winslow further testified that he was not obligated to make capital contributions to the business and had no risk of loss other than his salary.

When he first discussed starting a plumbing business with Nolan, Winslow did not have a master plumber's license required by local ordinances to operate a plumbing business in St. Louis City or St. Louis County. Once Winslow took the required test and received his master plumber's license, he and Nolan began their plumbing business. The business was to specialize in backflow prevention work. Nolan and his daughter, Erin Hebenstreit, filed paperwork with the State of Missouri to form the plumbing business as a limited liability company. Winslow did not learn that a limited liability company had been formed until after the paperwork had been filed.

The name of the limited liability company formed by Nolan and his daughter was Accurate Backflow Systems, LLC (ABS). Winslow was not named as an owner of ABS on any of the documents filed with the State of Missouri. Winslow presented no evidence at trial that Nolan owned any interest in ABS. The only evidence of the ownership interest in ABS was presented by Nolan's daughter who testified that she was listed as the owner of ABS.

Winslow performed the plumbing field work for ABS and also contacted potential customers to generate business for ABS. Winslow was paid a salary by ABS during his entire tenure with ABS. Winslow testified that Nolan operated as the office manager for ABS, but generated few sales. Winslow estimated that Nolan brought in about 30 percent of the customers, while Winslow generated the remaining 70 percent of the business. Winslow worked at ABS until his employment ended in May 2007.

Winslow testified that after ending his business relationship with Nolan, Winslow started his own company, doing "the same exact thing [he] did [with Nolan]." Winslow testified he earned far more money as a business owner than as a salaried master plumber, and provided an estimate of ABS's profits based upon his experience and knowledge from running his own company. Winslow testified that his company performed "exactly the same work" that he and Nolan did at ABS, and that the costs, methods of installation, and figuring profits were also the same. Winslow further testified that he based his estimate of profits for ABS on the financial numbers Nolan had provided to him regarding the amount of work performed at ABS. Winslow estimated ABS's profit margin was at least 50 percent during the first year of operation. Winslow testified that ABS earned about $150,000 in gross revenues during the first year. After deducting about $100,000 for his master plumber's

salary, Winslow claimed that $50,000 remained to be divided equally between Winslow and Nolan. Winslow further claimed ABS earned $250,000 in annual revenues the following two years, and estimated profits of $100,000 for each year after deducting $100,000 for the master plumber salary and $50,000 in other expenses. Winslow testified that both he and Nolan should have received $50,000 in shared profits during each of those two years. In total, Winslow estimated that he was entitled to $125,000 as his share of the profits from the plumbing partnership.

Nolan presented evidence that he did not agree to enter into a partnership with Winslow. Although Nolan had commented to Winslow that ABS would "consider" sharing profits if the company earned a profit, he never agreed to share profits from the plumbing business. Nolan also presented evidence that ABS did not earn a profit in 2004, 2005 or 2006, and earned a meager profit of $324 in 2007. Nolan further presented evidence that Winslow was paid a salary as a master licensed plumber at or above the required union scale during the entire time Winslow worked for ABS. Nolan claimed that Winslow was an employee of ABS, and did not have any interest in the ownership or profits of ABS. Nolan presented testimony that his daughter owned ABS and financially ran the company while Nolan made the day-to-day operations decisions.

On July 1, 2009, the trial court entered its findings of fact and conclusions of law, finding that Winslow and Nolan had agreed to form a plumbing company in which they would equally share the profits and ownership of the company. The trial court also found that both parties were to receive compensation for their services until such time as the company became profitable, at which time both parties would receive a 50 percent division of the company's profits. The trial court found Nolan's evidence not credible that ABS was not profitable during 2004, 2005, and 2006, and earned a small profit for 2007, and found Winslow's testimony "totally credible" that Nolan assured him that the company was indeed making a profit. The trial court further found that Winslow's testimony on ABS's profits was "totally credible and reasonable," but allowed for fewer earned profits at the company's inception and for other employees hired. The trial court found that ABS earned $150,000 in profits during Winslow's tenure, which entitled Winslow to 50 percent of the profits earned, or $75,000. The trial court ruled that Nolan had been unjustly enriched and ordered that Winslow receive his fair compensation of $75,000 from Nolan.

On July 8, 2009, Nolan filed his Motion for New Trial, and amended that motion on July 28, 2009. Nolan argued that the trial court erred in awarding Winslow speculative damages not based on the evidence adduced at trial, and in applying the theory of unjust enrichment. The trial court denied Nolan's Motion for New Trial on August 24, 2009.

Nolan filed his Notice of Appeal to this Court on August 31, 2009. This appeal follows.

## Points on Appeal

Nolan raises two points on appeal. In his first point, Nolan alleges the trial court erred in finding a partnership was created between Winslow and Nolan and awarding damages to Winslow from Nolan. Nolan argues the trial court misapplied the law to the facts presented at trial because there was no evidence of a written or oral agreement establishing a partnership, no evidence of profits to divide, and no evidence of specific damages presented to the court by Winslow.

In his second point on appeal, Nolan alleges that the trial court erred in finding

Nolan was unjustly enriched by accepting the benefits of Winslow's labor and efforts because Winslow was paid wages, union dues, and was provided with a company truck throughout Winslow's employment with ABS.

### Standard of Review

 Appellate review of a court-tried case is governed by Missouri Supreme Court Rule 84.13 and follows the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "Great deference must be given to the trial court's resolution of conflicts in evidence, and this Court gives due regard to the court's opportunity to have judged the credibility of witnesses before it." *In re Competency of Parkus*, 219 S.W.3d 250, 255 (Mo. banc 2007).

 In considering whether the judgment of the trial court is against the weight of the evidence, this Court may exercise its power to set aside the judgment "only with caution and only if it possesses a firm belief that the judgment is wrong." *MC Dev. Co., LLC v. Central R–3 Sch. Dist. of St. Francois County*, 299 S.W.3d 600, 602 (Mo. banc 2009). *This Court accepts all* evidence and inferences therefrom in the light most favorable to the prevailing party and disregards all contrary evidence. *Id.*

### Discussion

**I. No partnership was formed because the evidence unequivocally proves the parties did not agree to share any losses or liabilities of the plumbing business.**

 Nolan contends that insufficient evidence exists in the record to support the trial court's finding that a partnership existed between Winslow and Nolan, or that Winslow was entitled to damages. The evidence relating to the formation of a partnership between Winslow and Nolan is substantially contradictory. Winslow testified that although there was no written agreement, he and Nolan orally agreed to start their own plumbing business as a partnership, and that the ownership and profits would be divided equally between them. Nolan testified that no partnership agreement was entered into, written or oral, and that there was no agreement between he and Winslow to share profits or an ownership interest in the plumbing business.

We acknowledge that the trial court is the arbiter of credibility and that the trial court expressly found not credible the testimony presented by Nolan, and found credible Winslow's testimony regarding the foundation of the plumbing partnership. We acknowledge further the parameters of our review under *Murphy v. Carron*, 536 S.W.2d at 32, and strictly adhere to that mandate. However, even disregarding the evidence presented by Nolan and wholly accepting as true the testimony of Winslow, we nevertheless are compelled to reverse the trial court's judgment because the evidence presented by Winslow, although credible, fails to provide substantial evidence that a partnership was formed under the established law of Missouri.

 A partnership is judicially defined as "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." *Meyer v. Lofgren*, 949 S.W.2d 80, 82 (Mo.App. W.D.1997). The

law never presumes the existence of a partnership, but he who asserts its existence has the burden of showing such existence. *Nesler v. Reed,* 703 S.W.2d 520, 523 (Mo.App. E.D.1985). The plaintiff bears the burden of proof of presenting cogent, clear, and convincing evidence that the parties entered a definite and specific partnership agreement. *Id.* A partnership agreement "may be either oral or written, verbally expressed or implied from the acts and conduct of the parties themselves." *Id.*

As noted, for purposes of our review, we accept all testimony of Winslow as truthful, credible and probative. *See id.* Winslow testified that he and Nolan entered an oral agreement in which they would form ABS to specialize in backflow prevention and share equally in the profits and ownership of the business. Winslow testified that the parties conducted themselves consistent with that agreement. Winslow committed his time and efforts into acquiring the necessary licenses to conduct a plumbing business under local ordinances, and then contributed his labor and plumbing skills to operate the business. Nolan worked as the office manager and performed customer sales work. However, Winslow also testified that he had no agreement with Nolan to share any losses or liabilities of the plumbing business. In fact, Winslow testified that should the business fail, he had nothing to lose from the business other than his own salary. While we accept Winslow's testimony regarding the sharing of profits as true, Winslow's uncontradicted testimony that the parties did not agree on the sharing of liabilities is fatal to his claim that a partnership was formed. Substantial evidence of the formation of a partnership by Winslow and Nolan is lacking because the parties failed to address or consider the sharing of any potential liabilities or losses of the business enterprise. Given the facts of this case as presented at trial, the absence of any agreement by the parties regarding the sharing and allocation of any possible losses or liabilities of the plumbing business precludes the formation of a partnership agreement.

Instructive to our holding is this Court's ruling in *Nesler v. Reed,* 703 S.W.2d at 525, where we declared that the trial court erred in holding that a partnership existed and awarding damages to the plaintiff. In *Nesler,* as in this case, the plaintiff introduced evidence of an agreement to share profits, but acknowledged by his own testimony that the consideration of losses was never a part of the partnership agreement upon which he relied. *Id.* This Court explained, "Where the issue is intent of the parties, the absence of an agreement on the sharing of profits and losses is probative of the proposition that no partnership agreement was made." *Id.* Further,

> the absence of any discussion or agreement on the sharing of losses is not a minor detail. Any inference of the existence of a partnership drawn from the sharing of profits is far from conclusive, and this is particularly true where the parties, although agreeing to divide profits, do not agree to share any possible losses.

*Id.* (internal citations omitted). Notably, we held in *Nesler* that while the testimony may have supported a finding that there was an employment agreement in which the sharing of profits was an element of compensation, such testimony was insufficient to establish the parties intended a partnership. *Id.* at 523. Similarly, while the evidence here may have supported a finding that Winslow had an employment agreement under which he was to receive a salary and a portion of the profits, the trial court made no such finding.

In light of Winslow's testimony and the established principles of partnership law in Missouri, we hold that there is no substantial evidence to support the trial court's judgment that Winslow and Nolan formed a partnership agreement. Winslow has not proven he was a partner with Nolan at ABS. Thus, the judgment awarding Winslow partnership damages is reversed.

## II. Evidence does not support a finding of unjust enrichment against Nolan because there was no evidence that Nolan received any benefits from Winslow's efforts or any profits from the plumbing business.

Nolan also alleges that the trial court erred in finding that he was unjustly enriched by accepting the benefits of Winslow's efforts on behalf of ABS. Finding insufficient evidence in the record to support a finding that Nolan received any benefits from Winslow, we hold that the trial court erred in finding Nolan was unjustly enriched and ordering Nolan to pay Winslow $75,000.

Unjust enrichment occurs where a benefit is conferred upon a person under circumstances in which the retention by him of that benefit without paying its reasonable value would be unjust. *Pitman v. City of Columbia*, 309 S.W.3d 395, 402 (Mo.App. W.D.2010). This quasi-contractual theory of recovery measures not the actual amount of the enrichment, but the amount of the enrichment that, as between the two parties, would be unjust for one party to retain. *Id.* at 402–03. "Thus, a plaintiff must present evidence of the amount of the benefit conferred upon the defendant." *Id.* at 403.

The trial court's judgment is premised upon a finding that Nolan benefited from the fruits of Winslow's labor, knowledge and experience. Whether or not the benefits conferred by Winslow are valued at $75,000 is inconsequential to our decision because, regardless of the value of the benefits of Winslow's labor, knowledge and experience, the record is void of any evidence that Nolan received or accepted such benefits. Because we have found no substantial evidence to support the formation of a partnership agreement, our analysis of Winslow's claim of unjust enrichment must look beyond Winslow's assertion that Nolan was enriched by accepting Winslow's services and not paying Winslow his share of the partnership profits.

The evidence at trial shows that Winslow worked for and was paid by ABS. We have already determined that neither Winslow nor Nolan was a partner in ABS. Furthermore, the record before us does not include any evidence that Nolan was an owner of ABS. In fact, the evidence regarding the ownership of ABS is minimal. While there is testimony from Nolan and Hebenstreit that ABS was organized as a limited liability company and that Hebenstreit was the owner of ABS, we disregard this evidence given the trial court's credibility findings and *Murphy v. Carron*, 536 S.W.2d at 32. Thus, we are left with no evidence as to the ownership of ABS, and certainly no evidence that Nolan owned any part of ABS.

Here, Winslow testified that he received a salary and benefits annually while working at ABS. There is no testimony that Winslow's salary did not justly compensate him for the work he performed. In fact, the evidence before us is that Winslow was paid at or above union scale for the work he performed. Having received a fair salary for his work, Winslow's only argument for unjust enrichment lies in his claim that Nolan benefited as a partner in the plumbing business from Winslow's efforts, and has unjustly retained all of the business profits. Although Winslow testified that he was entitled to a share of profits in addition to his union scale salary and benefits and estimated his share of the profits

to be $125,000, neither Winslow nor any other witness testified, nor presented any evidence, of a benefit conferred on Nolan directly by Winslow, or of any benefit conferred on Nolan by ABS. Only Nolan, not Winslow, presented evidence as to the salary Nolan was paid by ABS, and Nolan's salary was small in comparison to the amount paid to Winslow by ABS. Evidence of Nolan's daughter's ownership and formation of ABS, vague evidence of business expenses, and evidence of Winslow's salary and benefits leaves this Court without sufficient evidence to find that Nolan was unjustly enriched. We are cognizant of the trial court's concern that profits earned by ABS have not been distributed to Winslow. But without substantial evidence that Nolan received such profits or benefited from Winslow's efforts in generating such profits, Winslow cannot prevail against Nolan on his claim for unjust enrichment.

After a thorough review of the record presented and with a firm belief that the judgment against defendant Nolan is erroneous, we hold that there is insufficient evidence to support the trial court's judgment. *Murphy v. Carron*, 536 S.W.2d at 32. Winslow has not presented substantial evidence to support his claim for half of the company's profits because of a partnership agreement or that Nolan has been unjustly enriched as a result of Winslow's efforts.

### Conclusion

Because there is insufficient evidence on the record to support the trial court's determination, the judgment of the trial court is reversed.

ROBERT G. DOWD, JR., and NANNETTE A. BAKER, J., Concur.