**William Scott REYNER,
et al., Appellants,**

v.

**Rainey J. CRAWFORD,
Jr., Respondent.**

**No. ED 94788.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 1, 2011.

169

Patricia A. Wilcox, St. Louis, MO, for appellant.

Thomas H. Rolwing Jr., St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

William Reyner and the McPherson Condominium Association ("Association") (collectively "Appellants") appeal from the judgment of the trial court in favor of Rainey Crawford, Jr. ("Crawford") on all counts of their second amended petition. We affirm in part and reverse and remand in part.

Viewed in the light most favorable to the judgment, the facts are as follows. In October 2005, Reyner purchased a unit in the Association, a two-unit condominium, with the address 5774A McPherson ("5774A"), in the City of St. Louis, Missouri. Rainey Crawford III ("Rainey"), the son of Crawford, told Reyner that he owned the other unit, 5774 McPherson ("5774"), though in fact his father, Crawford, was the owner. From the date of Reyner's purchase of 5774A until his death in late 2007, Rainey ran the Association. Every year, Reyner paid the annual assessment of $1,800 for his share of the Association condominium fees into the Association bank account. Crawford sent money to Rainey to cover the assessments as well as for other expenses associated with real property being developed in St. Louis by Crawford. Rainey was Crawford's construction manager for developments in St. Louis. At the time of Rainey's death, there were no unpaid bills owed by the Association.

After Rainey's death, Reyner learned that Crawford was the actual owner of unit 5774. At some point, water began to leak into Reyner's unit from the roof. Crawford suggested using a contractor, Mr. Cotton of Cotton Roofing, with whom he was familiar. Cotton inspected the roof, stated that he could fix the problems and that it was not necessary to replace the roof, though he could do that if that was what Reyner and Crawford wanted. Cotton did some repair work on the roof. Reyner was not satisfied with the repairs, claiming that there was still a leakage problem. Cotton returned and made further repairs, and offered to return if there were any further problems. Reyner contended that the roof still leaked, and contacted another roofing contractor, Lawlor Custom Roofing ("Lawlor Roofing"). Reyner brought a proposal from Lawlor Roofing to do further roofing work to the St. Louis office of the Crawford Group, and gave the proposal to Angela Haynes. Haynes, who shared the office space with the Crawford Group and was acting as a contractor for Crawford in winding up Rainey's affairs, signed the proposal on behalf of Crawford. Crawford subsequently ratified Haynes' signing the Lawlor Roofing proposal.

Lawlor Roofing repaired the roof, and Reyner paid Lawlor Roofing in full. Reyner was not satisfied with Lawlor Roofing's repairs, and subsequently retained Javier Gomez to do further work on the roof, without consulting Crawford before having Gomez work on the roof. Crawford refused to pay his share of the work done by Lawlor Roofing, believing that the subsequent work done by Gomez at Reyner's unilateral request voided any warranty for Lawlor Roofing's work, and therefore he should not have to pay.

Reyner, on behalf of himself and the Association, filed a petition against Crawford, subsequently amended twice.[1] The second amended petition alleged that Crawford failed to pay the assessments for his unit in the Association, in part or in whole, for the years 2005, 2006, 2007, and

---

1. Reyner initially received a default judgment in his favor that the trial court set aside on motion from Crawford.

2008, as well as failed to pay his share of special assessments of August 7, 2006, and January 10, 2007. It further alleged that Crawford and Rainey, acting as the former's agent, breached fiduciary duties owed to Reyner and the Association by mismanaging the financial affairs of the Association. The second amended petition also claimed that Crawford and Rainey, acting as his agent, converted funds from the bank account of the Association to personal uses not associated with the expenses of the Association. It also alleged that the Association has a lien on Crawford's unit due to unpaid assessments, and requested that the trial court foreclose on that lien. In the fifth count, the second amended petition alleged that Crawford was unjustly enriched at the expense of Reyner by reason of money that Reyner spent to maintain and improve the common areas of the Association, for which Crawford failed to reimburse him for his proportionate share of the expenses. Crawford raised a number of affirmative defenses, and filed a counterclaim against Reyner as well.

At trial, Reyner, Crawford, Cotton, Haynes, and Anita Savage–Swift testified, and both parties submitted a number of exhibits. Reyner testified that until the time of Rainey's death, he believed that Rainey owned the unit at 5774, and did not know that Crawford was in fact the owner, and that Rainey managed the Association until his death. He further stated that he and Rainey handled the budget and financial matters of the Association informally. Crawford testified that he paid the assessments on 5774 each year, though he did not have checks that clearly indicated those payments. He stated that in 2006 and 2007 he wired large lump sums of money to Rainey's personal account, not that of the Association, to cover the assessments for 5774, as well as for other things, and that he had an agreement with Rainey

to that effect. He admitted that he did not know where the money went after it was wired to Rainey's personal account. Crawford stated that Rainey was not his agent for 5774, though he was the construction manager for the real estate construction projects of the Crawford Group in St. Louis. Crawford testified that after Rainey's death, he paid his assessments by using his personal account to pay bills for the Association.

Regarding the roof leaks, Crawford testified that he first had Cotton Roofing examine the roof and try to repair it on two occasions, and that Cotton was willing to keep coming back until the problems were fixed. He said that the first he heard of continuing problems was that Reyner was bringing a contract in to his office in St. Louis for him to sign. Crawford stated that Reyner did not contact him directly about the Lawlor contract, but rather "he sent the contract to my office, and my people talked to me about the contract." He averred that Haynes signed the Lawlor Roofing contract on his behalf, though she did not have the authority to do so at that time, but admitted that he ratified her action and the Lawlor Roofing contract. Crawford testified that he never paid for his share of the work done by Lawlor Roofing, and stated that he felt that he did not have to pay for it because of Reyner's subsequent unilateral hiring of Gomez to do further work on the roof after Lawlor Roofing had repaired it. He said that he believed that the work done by Gomez at Reyner's request without his approval voided Lawlor Roofing's warranty for roof work.

The trial court entered judgment in favor of Crawford on all counts of Reyner's petition, and in favor of Reyner on all counts of Crawford's counterclaims. Reyner now appeals from this judgment.

In a bench-tried case, this Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court on factual issues because it is in a superior position to judge the credibility of witnesses and the persons directly and also their character and sincerity and other trial intangibles that may not be revealed completely by the record. *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 652 (Mo. banc 2009). As the finder of fact in a bench trial, the trial court is the sole judge of the credibility of witnesses, and it is free to believe or disbelieve the testimony of any witnesses. *Ken Cucchi Construction, Inc. v. O'Keefe*, 973 S.W.2d 520, 528 (Mo. App.1998). It can believe none, all, or some of a witness's testimony. *McCormick v. Cupp*, 106 S.W.3d 563, 569 (Mo. App.2003). Where the trial court has not made findings of fact on a disputed issue, we assume that it resolved the factual dispute in accord with its judgment. Rule 73.01; *Clean Uniform Company St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 606–07 (Mo.App.2009).

■ In their first point relied on, Appellants contend that the trial court erred in entering judgment in favor of Crawford "because its finding that [Crawford] owed no annual or special assessments for the years 2005, 2006, 2007, 2008, 2009, and 2010 was not supported by the evidence, in that the evidence established that [Crawford] had never paid any monies to the [Association]."

We note initially that the trial court did not make findings, and accordingly, this Court presumes that all factual findings are in accord with the trial court's judgment.[2] We further note that in their second amended petition, Appellants did not assert that Crawford had failed to pay assessments for 2009 and 2010, and did not request that the trial court award them damages for unpaid assessments for those years. As stated above, the trial court as the finder of fact can choose to believe none, all, or some of any witness's testimony. *McCormick*, 106 S.W.3d at 569. Crawford testified that he had met the obligations for the assessments for the years from 2005 through 2008, and for the special assessments from August 2006 and January 2007. He stated that he sent over $21,000 in two wire transfers between 2006 and 2007 to Rainey, with the agreement that "my assessments would be paid using this method, as well as doing other things with the money." While he conceded that he did not know for a certainty what Rainey did with those sums after they had been wired to his personal account, he assumed that Rainey would handle things correctly. His testimony was that he and Rainey handled these finances informally as father and son. There was some documentary evidence from cancelled checks that suggested that Rainey paid at least some expenses for the Association using his personal account, and that he wrote checks to his personal account from the Association bank account.

The business practices of both Rainey and Crawford, as evidenced in this case, were not model examples of how to manage the finances of a business or a condominium association. Clearly it would have been a better practice for Crawford to send a deposit directly to the Association's bank account for the annual and special

---

2. Our review of the record on appeal does not indicate that either party requested the trial court to make findings of fact, and neither party raised the lack of findings as an issue on appeal.

assessments, or at least for Rainey to make such deposits after receiving the wire transfers. Informality has its drawbacks, most notably when disputes arise, but we note that Reyner acquiesced in Rainey's informal methods of conducting the business and finances of the Association for several years. That Rainey did not deposit his father's payments towards the assessments, regular and special, into the Association's bank account does not mean that Crawford did not pay the assessments, and that those sums were not spent on Association-related expenses. Based on its judgment, the trial court apparently believed Crawford regarding this issue, and drew favorable inferences from the testimony and documentary evidence. There was substantial evidence to support the trial court's judgment on this issue. Point denied.

In their second point relied on, Appellants argue that the trial court erred in finding that Crawford "was not the principal of [Rainey], and entering judgment for [Crawford] because the Trial Court erroneously applied the law of agency in that the record contains substantial evidence that (1) [Rainey] consented to acting on behalf of [Crawford] regarding the conversion of funds of the [Association]; (2) [Crawford] controlled his son and the ends of his son's activities regarding the [Association] and (3) the son acted with the actual authority of [Crawford]."

Reyner contends that Rainey was the agent of Crawford regarding the management of the Association, although the record indicates that Reyner had the power, by virtue of his ownership of the larger unit, to control who was in charge of the Association. He further asserts that Rainey had actual authority, not apparent authority.

■ The Missouri Supreme Court in *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60 (Mo. banc 1993) adopted the definition of an agency relation set forth in the Restatement (Second) of Agency (1958). There are three essential elements: 1) that an agent has a power to alter legal relations between the principal and a third party; 2) that an agent is a fiduciary with respect to matters that are within the scope of the agency; and 3) that a principal has the right to control the agent's conduct with respect to matters entrusted to the agent. *State ex rel. Ford Motor Company v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002). The absence of any of these three characteristics defeats the purported agency relationship. *Id.*

■ In the present case, Rainey was not an agent of Crawford regarding the Association. Crawford entrusted Rainey with monies to pay the assessments for 5774, but there is no evidence that Rainey had the power to alter legal relationships between Crawford and a third party. Rainey may well have been an agent for Crawford regarding the construction projects of the Crawford Group, as Crawford described his late son as his construction manager. That did not make him an agent regarding 5774 or the Association, absent Rainey having the power to alter legal relationships between Crawford and a third party.

■ Assuming *arguendo* that Rainey was an agent of Crawford for purposes of dealing with the Association with actual authority. There is no evidence that Rainey had actual authority to commit the criminal activity of misappropriating funds of the Association, which would also constitute the tort of conversion, other than Reyner's testimony that this was so, which the trial court could freely disbelieve. Certainly Rainey did not have apparent authority, given that Reyner was unaware that Rainey was not the owner of 5774.

There is no evidence that the alleged defalcations of Rainey were done to benefit Crawford, other than Reyner's testimony that this was what happened. Point denied.

■ Appellants' third and fourth points relied on address the same issue, namely unjust enrichment, and we will treat them as one point relied on. Appellants argue that the trial court erred in finding that Crawford was not unjustly enriched because such a finding is not supported by substantial evidence, and that the trial court erroneously applied the law on unjust enrichment where substantial evidence showed that Crawford was unjustly enriched.

■■ Unjust enrichment occurs when a benefit is conferred on a person under circumstances in which it would be unjust for him to retain that benefit without paying for its reasonable value. *Winslow v. Nolan*, 319 S.W.3d 497, 503 (Mo.App.2010). Unjust enrichment is an equitable remedy based on the concept of a quasi-contract, and it measures not the actual amount of enrichment, but rather "the amount of the enrichment that, as between the two parties, would be unjust for one party to retain." *Id.* Accordingly, a plaintiff must provide evidence of the benefit that was conferred to the defendant. *Id.*

Despite his claims that Cotton Roofing would have kept repairing the roof until it was fixed properly and that it was not necessary to hire Lawlor Roofing, Crawford nevertheless ratified the Lawlor Roofing contract, and testified that he did so. As the owner of one of the two units, he consequently received a benefit when the roof, part of the common elements, was repaired by Lawlor Roofing. He testified that he did not pay his share of the cost of the Lawlor Roofing contract. It would be unjust for Crawford to retain that benefit without paying for its reasonable value.

The only evidence of the reasonable value was the price of the Lawlor Roofing contract itself. In his brief, Crawford contends that he is not obligated to pay for one-half of the Lawlor Roofing contract because Reyner is barred by the equitable doctrine of "unclean hands," arguing that Reyner's unilateral retention of Gomez, and Gomez's subsequent roofing repairs voided the warranty from Lawlor Roofing, and effectively that it made the benefit conferred worth nothing.

■ A litigant with "unclean hands" is, in general, not entitled to equitable relief. *Purcell v. Cape Girardeau County Commission*, 322 S.W.3d 522, 524 (Mo. banc 2010). "This rule reflects that the law strives to prevent opportunistic behavior." *Id.* " 'A party who participates in inequitable activity will be barred by its own misconduct from receiving relief' " *Id.* (quoting *City of St. Joseph v. Lake Contrary Sewer District* 251 S.W.3d 362, 369 (Mo.App.2008)).

Crawford is not liable for any of the cost of the work performed by Gomez, given that Reyner unilaterally retained Gomez after he was not satisfied with the work done by Lawlor Roofing. However, there is no evidence that the Lawlor Roofing warranty was voided other than Crawford making the self-serving legal conclusion that the warranty was voided. No representative of Lawlor Roofing testified, and there was no document entered into evidence that Lawlor Roofing considered the warranty to be voided. Given the evidence presented, the warranty is still apparently in effect and the work done by Lawlor Roofing of some value. Crawford had a legal remedy, the counterclaim for tortious interference with a contract. The trial court denied that counterclaim. Under the circumstances, it would be unjust for Crawford to retain the benefit of the work

done by Lawlor Roofing without paying the reasonable value of that benefit.[3] Point sustained.

The judgment of the trial court is affirmed in part and reversed and remanded with instructions to enter an amended judgment consistent with this opinion.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY,. J., concur.

---

3. Based on the record on appeal, the only evidence of the reasonable value of the "benefit" conferred on Crawford by the Lawlor Roofing work is one-half of the price in the Lawlor Roofing proposal for all of the work, namely fifty percent of $2,685.57, or $1,342.78. Reyner paid the full amount of the Lawlor Roofing bill.