

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| PEOPLES NATIONAL BANK, N.A., | ) | No. ED107584 |
| | ) | |
| Respondent/Plaintiff-Counterclaim Defendant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| | ) | |
| vs. | ) | 13SL-CC03334 |
| | ) | |
| PATRICIA FISH, et al., | ) | Honorable Nancy Watkins McLaughlin |
| | ) | |
| Appellant/Defendant-Counterclaim Defendant, | ) ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| U.S. Bank, N.A., | ) | |
| | ) | |
| Respondent/Third- Party Cross-Claim Counter Plaintiff. | ) ) | Filed: April 7, 2020 |

## OPINION

1. <u>Introduction</u>.

Appellant Patricia Fish appeals the judgment entered after a four-day bench trial in favor of Peoples National Bank, N.A. (PNB) and U.S. Bank (USB), on their separate claims against her for liability on two promissory notes and related deeds of trust purportedly executed by her or by her then-husband Brian Fish in her name and secured by her Clayton, Missouri home, property which Appellant solely owned. The trial court found in favor of PNB and USB based on its finding that Brian Fish executed Appellant's signature on the promissory notes and deeds

of trust with Appellant's "express approval and authority." Alternatively, the trial court found that even if the documents were not executed with Appellant's authority, then Appellant is still liable because she ratified Brian Fish's authority to execute those documents in her name because she was fully knowledgeable of the transactions and she received the substantial proceeds of the transactions.

The trial court entered judgment in favor of PNB on its first count for liability under its promissory note for the principal amount outstanding plus contract interest, post-judgment interest, late charges, and attorney's fees. The court also entered judgment in favor of PNB on its claim for judicial foreclosure subject to the interests of USB. As to the claims and counterclaims between USB and Appellant, the court found in favor of USB on all such matters and entered judgment for USB for the principal amount remaining due on its promissory note plus interest and attorney's fees. Finally, the court outlined the procedures to be followed pursuant to its judgment in favor of PNB and USB of judicial foreclosure for the sale of Appellant's home in the event Appellant fails to pay the foregoing judgments within 20 days of their becoming final.

We affirm the judgment in favor of PNB and USB because the record strongly supports the trial court's conclusion that Appellant ratified Brian Fish's authority to execute both promissory notes and deeds of trust.

2.    Factual and procedural background.

Appellant purchased her Clayton, Missouri home as its sole owner in 1996 and she remained the sole owner at all relevant times. At the time the two mortgage loan transactions at issue before us were executed on May 15, 2009 and May 21, 2009, there were already two mortgages encumbering Appellant's home:  (1) a first mortgage loan in favor of Bank of

America with a principal balance of approximately $408,000 secured by a deed of trust on the property, and (2) a second mortgage in favor of Parkside Financial Bank & Trust (Parkside) with a balance of $550,000 which debt consisted of a $50,000 loan Parkside made to the Fishes personally and a $500,000 loan Parkside made to St. Louis Sports Partnership, a business owned by Brian Fish and Mark Militello. While the Fishes and the Militellos were all jointly and severally liable on the entirety of the Parkside debt which was also secured by Appellant's home through a second deed of trust, Parkside agreed to divide the debt and hold the Fishes responsible for $300,000 and the Militellos the remaining $250,000.

After falling behind on their loan payments to Bank of America and Parkside, the Fishes sought to refinance these two mortgage loans and ultimately obtained the two new loans at issue from PNB: (1) the First Loan, executed on May 15, 2009, and the Second Loan, executed 6 days later on May 21, 2009. Soon thereafter, USB acquired the First Loan from PNB, while PNB retained ownership of the Second Loan.

The documents executed for each loan consisted of a promissory note and a deed of trust on Appellant's property. Both promissory notes and deeds of trust bore the purported signatures of Appellant and Brian Fish. Appellant maintained throughout this litigation that those were not her signatures but were forgeries by Brian Fish and that she never gave Brian Fish the authority to sign on her behalf. The parties engaged in substantial litigation on the issue of Appellant's signatures and there was extensive testimony on that question at trial.

The trial court, sitting as the fact-finder, concluded that Appellant did not sign the documents herself but that Brian Fish signed her name to the documents and he did so with Appellant's express approval and authorization. The trial court's finding in this regard was based on the circumstances surrounding the execution of the documents including the

3

communications between representatives of PNB and Appellant. PNB loan officer Thomas Carley testified that he and Appellant exchanged numerous telephone calls, emails, and facsimiles during the spring of 2009, during which Appellant inquired about the details of the transactions including the tasks and documents necessary for closing and Appellant expressed urgency that the loan transactions be closed as soon as possible.

Carley testified that he personally went to Appellant's home on May 15 and May 21, 2009 and retrieved from Brian Fish the respective loan documents which already bore the purported signatures of Appellant and Brian Fish. Carley then took the documents back to his office and instructed a PNB employee to notarize the signatures even though that employee had no personal knowledge regarding the signatures. In fact, Carley testified that he never met Appellant in person before the documents were executed and did not witness Appellant sign the documents nor did he witness Brian Fish's signatures. Carley also admitted that Appellant never told him orally or in writing that Brian Fish had her authority to execute her signature on the documents.

Nevertheless, Carley testified that it was his understanding that Appellant travelled frequently for her job and therefore was often unavailable for in-person meetings. He said that Appellant was aware of the closing dates of both loans and she was aware that the proceeds would pay off Appellant's outstanding and overdue debt to Bank of America and Parkside.

There was also testimony that from time to time when Appellant was to be out of town for work and in order to pay for household bills and expenses, Appellant gave Brian Fish blank checks from her checking account, which she had signed, and authorized him to fill in the name of the payee and the dollar amount. And sometimes, she left unsigned checks with Brian Fish and gave him the authority to complete the checks and sign her name to them.

4

After the loans were executed, there was considerable evidence as to Appellant's conduct and knowledge regarding the loans during the approximately three-year period of time from May 2009 until 2012. Appellant admitted that she made monthly payments on both loans. Appellant admitted that in 2009, 2010, and 2011, she and Brian Fish claimed on their joint tax returns the deductions for the interest paid on both loans. In 2012, in response to her accountant's inquiry regarding the deductibility of the interest on the Second Loan, Appellant responded that she had made "all the payments on the loan since its inception a few years back" and that it was a personal loan attached to the house. In 2010, in connection with Appellant's and Brian Fish's divorce proceedings, Appellant listed both loans on her sworn statement of property and expenses. Finally, there was evidence, including expert witness testimony and Appellant's own testimony, that Appellant in connection with the Second Loan signed several documents known as "Change in Terms Agreements" which contained language that purported to renew the original May 21, 2009 promise to pay.

3.    Standard of Review.

This Court will affirm the trial court's judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo.banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976)). Furthermore, a judgment in a court-tried case will be affirmed on any basis supported by the record. *Poger v. Mo. Dep't. of Transp.*, 501 S.W.3d 37, 41 (Mo.App.E.D. 2016). In a court-tried case, the evidence is interpreted in favor of the judgment, and all contrary evidence is disregarded. *Reyner v. Crawford*, 334 S.W.3d 168, 172 (Mo.App.E.D. 2011). Substantial evidence is evidence that, if believed, has

some probative force on each fact that is necessary to sustain the circuit court's judgment. *Ivie*, 439 S.W.3d at 199.

    4.    <u>Discussion</u>.

Appellant brings this appeal in four points relied on. In her first point, Appellant claims the trial court erred when it found that she had given Brian Fish the authority to sign her name to the promissory notes and deeds of trust at issue. Appellant relies principally on two statutes, § 432.010,[1] the Statute of Frauds, and § 442.360, a provision pertaining to powers of attorney, for her argument that PNB's and USB's failure to prove that Appellant gave Brian Fish a properly executed <u>and</u> recorded power of attorney authorizing him to execute these transactions is legally and factually fatal to the trial court's finding that Brian Fish had Appellant's authority. In her second point, Appellant asserts that the trial court's holding that she ratified both loan transactions through her conduct was erroneous because there was no substantial evidence that the aforementioned statutes were complied with or that Appellant had full knowledge of all facts material to the two transactions including the terms of the promissory notes and deeds of trust. And in her third and fourth points, Appellant attacks the trial court's conditional holding that in the event we reverse the court's findings that Brian Fish had Appellant's authority to execute the loans on her behalf or that Appellant ratified the loans, then PNB and USB should be granted an equitable lien on Appellant's home under applicable equitable principles.

Under the second point, we find there is substantial evidence in abundance that Appellant ratified Brian Fish's authority to execute the two promissory notes and associated deeds of trust. As a result, we need not reach Appellant's first point which addresses the trial court's finding that Brian Fish had Appellant's express authority when he executed the loan documents in

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

Appellant's name. Likewise, we need not reach the third and fourth points which attack the aforementioned conditional portion of the trial court's judgment.

A.    Appellant ratified Brian Fish's authority.

We borrow liberally from our Southern District colleagues' comprehensive opinion in *Wilks v. Stone,* 339 S.W.2d 590 (Mo.App.S.D. 1960). Ratification in the context of agency is the express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed in his behalf by another who at that time assumed to act as his agent but lacked the authority to do so. *Id.*; *see also, Epps v. Epps*, 438 S.W.3d 422, 424–25 (Mo.App.S.D. 2014). Ratification relates back and is the equivalent of authority at the commencement of the act. *Id.* It is the affirmance of a contract already made. *Id.*

The existence of agency and the authority of the agent can be and often is implied by proof of facts, circumstances, words, acts, and conduct of the party to be charged. *Id.* As applied to the agency or authority which is created or related back by means of ratification, it may be implied by any facts and circumstances from which it can be reasonably inferred that the party to be charged (with knowledge of the facts) acquiesced in and accepted the transaction as his own, or which are inconsistent with any other intention. *Id.*

As to the nature of the facts, circumstances, and conduct that will justify the inference of agency, no fixed rule can be stated and there is no particular mode by which it must be established because it depends upon the situation in each individual case. *Id*. Probably the most certain evidence of implied ratification is the acceptance and retention of the fruits of the contract with full knowledge of the material facts of the transaction. *Id.*

Since ratification may be established by facts and circumstances, it is a question for the trier of the fact whether the whole sum total of the facts and circumstances justifies *the*

7

*reasonable inference* that the party charged as principal accepted the transaction as his own. *Id.* It is not necessary that each separate act, fact, or circumstance stand on its own as proof sufficient to justify the inference. *Id.*

While PNB's conduct in connection with the execution of these two loans was unprofessional and sloppy, the record before us nevertheless abounds with evidence that Appellant ratified Brian Fish's authority to execute both loans and deeds of trust in her name. First and foremost, upon the execution of these loan documents in May 2009, Appellant immediately reaped the huge financial fruits of these transactions when the new loans extinguished over $700,000 in outstanding and past-due debt Appellant personally owed and which encumbered her home. And there can be little doubt on this record that Appellant knew at the time Brian Fish executed these new loans in her name that her existing debt would be paid off and the encumbrances on her home removed. Appellant was in repeated contact with PNB's loan officer regarding the details of the new loans and urged him to expedite the closings because, it is fair to infer, the existing mortgage holders were pressuring Appellant regarding the past-due status of her payments on those existing loans.

Appellant's conduct over the next several years further demonstrated Appellant's intent to ratify Brian Fish's authority to execute the loans. Appellant acknowledged her personal obligation on both loans by making numerous payments from her personal checking account, by executing the Change in Terms Agreements (at least as to the Second Loan), and by representing to the United States and Missouri tax authorities and to the family court judge presiding over her divorce proceedings, that the loans were hers.

The latter two representations also further satisfy the most important factor from *Wilks'* ratification analysis–whether Appellant reaped the benefits of the transactions–because

8

Appellant benefitted financially by claiming the tax deduction on the interest paid on the loans and likely benefited in connection with the property distribution made in her divorce case.

We conclude, therefore, that the record here readily demonstrates that Appellant ratified Brian Fish's authority to execute the two promissory notes and the two deeds of trust at issue.

     5.     <u>Attorney's fees on appeal</u>.

We now turn to USB's motion for attorney's fees on appeal filed pursuant to this Court's Special Rule 400. USB's motion seeks attorney's fees pursuant to the attorney's fees provisions in its promissory note and deed of trust.

"Our Court may award a party reasonable attorneys' fees on appeal if they are authorized by a written agreement that is the subject of the issues presented on appeal." *Frontenac Bank v. GB Investments, LLC*, 528 S.W.3d 381, 397 (Mo.App.E.D. 2017). In this case, the attorney's fees provision in the promissory note provides in relevant part: "[USB] will have the right to be paid back by [the Fishes] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." Similarly, the deed of trust provides that "Lender shall be entitled to collect all expenses incurred" in connection with the enforcement of this deed "including, but not limited to, reasonable attorneys' fees and costs of title evidence." So, we find that attorney's fees are authorized by the terms of the USB promissory note and deed of trust, and therefore, we may award USB attorney's fees on appeal.

Moreover, we have the authority to fix the amount of attorney's fees on appeal. *Id.* Given our foregoing disposition of this appeal, it is manifest that an inordinate expenditure of time, effort, and resources by all parties and courts involved was caused by the conduct of PNB, USB's predecessor-in-interest, in connection with the execution of the loan documents.

Accordingly, we decline USB's request for $10,141 in attorney's fees on appeal and award $1,000 instead.

6.      Conclusion.

For the reasons set forth above, we affirm the judgment of the trial court. In addition, USB's motion for attorney's fees on appeal is granted in the amount of $1,000.

_____

James M. Dowd, Judge

Colleen Dolan, C.J., and
Sherri B. Sullivan, J., concur.